**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SHAWNTAY GILL,

    Plaintiff,

    v.

                                      Civil Action No.:  SAG-22-2077

JUSTIN MALLOW,

    Defendant.

**MEMORANDUM OPINION**

Pending in this civil rights case is Defendant Justin Mallow's Motion to Dismiss or, in the alternative, for Summary Judgment.  ECF No. 17.  Self-represented Plaintiff Shawntay Gill opposes the motion. ECF No. 19.  The Court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, Defendant's motion, construed as a Motion to Dismiss, shall be denied; Gill shall be granted an opportunity to request appointment of counsel; and the parties will be directed to file status reports.

**BACKGROUND**

Gill alleges that Mallow used excessive force against him while arresting him and processing him through the Allegany County Detention Center.  Specifically, Gill alleges that on September 14, 2021, a search warrant was executed for 102½ East First Street via forced and unannounced entry.  ECF No. 1 at 5.  The search of the residence uncovered controlled substances as well as related paraphernalia, leading to Gill and two other people being arrested.  *Id*.  Gill claims that an officer with the Cumberland City Police Department ("CCPD") conducted a search of his person which included a partial strip search.  No weapons or other contraband were found during that search.  *Id*.

While Gill was in the custody of the CCPD officer who searched him, he claims that Trooper Justin Mallow asked that officer if he had searched "this Black Monkey," referring to Gill. ECF No. 1 at 6. Although the CCPD officer answered that Gill had already been searched, Gill claims that Mallow "seized [him] from the CCPD Officer . . . pulled Plaintiff's pants down finding nothing, then pulled Plaintiff's pants back up, then pulled them down again this time all the way to Plaintiff's shoes, and defendant then shoved a finger into Plaintif's [sic] rectum." *Id*. When Gill screamed out in pain and told Mallow what he had done was unnecessary, he claims that Mallow responded: "Nigger I can do whatever the fuck I want and need to do to you Nigger and don't you ever forget it Boy." *Id*.

According to Gill, while his hands were still restrained behind his back, Mallow forced him to the floor face first. ECF No. 1 at 6. Gill recalls that Mallow then placed both of his thumbs behind each of Gill's ears and put his knee in the middle of his back. *Id*. Gill claims that Mallow then told him, "Nigger, shut the fuck up, you should have known you were going to 'get it' whenever I saw your no good Nigger ass again." *Id*. Shortly thereafter, Gill claims that Mallow turned him over onto his back and began choking him. *Id*. When Gill began complaining that he could not breathe, he alleges that Mallow told him that he better shut up or he would end up like George Floyd. *Id*.

Gill claims that Mallow then told the CCPD Officer who had searched Gill to take "that Nigger out front." ECF No. 1 at 6. The Officer took Gill outside of the house and sat him down on the front steps at the front entrance of the house. *Id*. at 7. Gill was there for approximately ten minutes when he recalls Mallow exited the house, approached Gill, and said, "I bet you thought I forgot about you, didn't you Nigger?" *Id*. Mallow then struck Gill on the right side of his face with his closed fist. *Id*.

2

Mallow asserts that Gill is mistaken as to his involvement.  He claims that his only involvement was assisting with the search warrant, and further claims that Gill could not have identified him because his identity was obscured by a face mask, with no visible name tag.  Rather, Mallow claims he did not enter the house until after the Cumberland City CERT team extracted Gill and "cleared" the house.  Mallow entered the house to search it and did not interact with Gill until much later at the detention center.  ECF 17-2 at 8.  Mallow further asserts that neither he nor any of the other officers had body cameras on the day in question and, therefore, the allegation that he told Gill he was turning his body camera off is not credible.  ECF No. 17-2 at 5, 8-9. Although there is a reference to Mallow's "sworn testimony" along with a cite to an exhibit, there is no exhibit attached to Mallow's motion.

Gill counters that, despite the factors noted by Mallow that obscured his identity, Gill knew it was Mallow due to prior contacts he had with him.  Gill references two cases: *State of Md. v. Shawntay Gill*, Crim. No. C-01-CR-19-000944 and C-01-CR-21-000274[1] (Allegany Co. Cir. Ct.). ECF No. 19-1 at 4.  Neither case lists Mallow as an arresting officer or an interested party.[2]

### STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c),

---

[1] The case number referenced by Gill in his Opposition Response is C-01-CR-21-000247.  ECF No. 19-1 at 4.  That case number, however, does not exist.  Case number C-01-CR-21-000274 is a criminal case against Gill that was initiated in the Allegany County courts.  *See.* http://casesearch.courts.state.md.us/casesearch/ (last viewed Oct. 30, 2023).

[2] *See* http://casesearch.courts.state.md.us/casesearch/ (last visited Oct. 30, 2023).

3

as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

The court is mindful that Gill is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim.  *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990).  A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

Although Mallow's motion pleads in the alternative for summary judgment, there is no evidence or exhibits submitted outside of the pleadings for this Court to consider.  Had Mallow submitted his declaration, his request for summary judgment would still fail as there are genuine disputes of material fact prohibiting summary judgment, *i.e.,* whether Mallow was involved, and whether ill knew him from prior interactions. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (where matters outside the pleadings are considered, the motion, plead in the alternative, may be "converted" to one for summary judgment).  Determining which of the parties is telling the truth requires a credibility determination that cannot be made on summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . ").

**DISCUSSION**

**A.      12(b)(6) dismissal**

Taking Gill's allegations as true, the complaint states a claim of excessive force during arrest.  Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, __ U.S. __, 137 S.Ct. 1539, 1546-47 (2017) ("The framework for analyzing excessive force claims is set out in *Graham*.").  Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Mendez*, 137 S.Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure."  *Id.* (quoting *Garner*, 471 U.S. at 8-9).  Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'"  *Mendez*, 137 S.Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)).  The use of force described by Gill in his verified complaint has no conceivable legitimate governmental interest.  Gill claims he did nothing to provoke the force used against him.  Rather, in one instance he was simply sitting on the sidewalk with his hands restrained when he was hit on the right side of his face.  Thus, his complaint survives scrutiny under Rule 12(b)(6).

B.      **Qualified Immunity**

Mallow asserts that he is entitled to avail himself of a qualified immunity defense.  ECF No. 17-2 at 10.  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'"  *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).  Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this court.  Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised.  *Katz*, 533 U.S. at 200.  Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 818.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Qualified immunity does not insulate Mallow here; a reasonable officer in his position would have known that the conduct alleged in the complaint violates the constitutional rights of the arrestee. It has been the well-settled law for more than 20 years that gratuitously punching or violating the bodily integrity of an arrestee violates the Fourth Amendment. Taking the allegations of the complaint as true, this was not a gray area where an officer simply made the wrong choice. Here, the conduct alleged was intentional and, as evidenced by the alleged racial slurs, it was malicious.

## C.     State Statutory Immunity

This same analysis applies to Mallow's claim that he is entitled to statutory immunity on any of Gill's State claims. ECF No. 17-2 at 11-12, citing Md. Code Ann., State Gov't §§ 12-101, 12-105; Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Immunity for State personnel is specifically

reserved for those acts or omissions within the scope of public duties.  *Id*.  Again taking the allegations of the complaint as true, Mallow's actions were not within the scope of his duties as a State Trooper and the conduct alleged was malicious.

### CONCLUSION

Having found that Gill's complaint states a viable claim and that Mallow is not entitled to dismissal of the complaint, the Motion to Dismiss or, in the alternative. for Summary Judgment, will be construed as a Motion to Dismiss and denied by separate order which follows.

  November 13, 2023
Date

_____/s/_____
Stephanie A. Gallagher
United States District Judge